SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Paul D. Leake
Abigail E. Davis
Jason N. Kestecher
Jacob G. Lefkowitz
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Counsel for Debtor Endo Ventures Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| **ENDO INTERNATIONAL plc,** *et al.*, | Case No. 22-22549 (JLG) |
| Debtors.[1] | Jointly Administered |
| **ENDO VENTURES LIMITED, an Irish company,** | |
| Plaintiff, | Adv. Proc. No. 22-07034 (JLG) |
| against | |
| **NEVAKAR, INC., a Delaware corporation, and NEVAKAR INJECTABLES INC., a Delaware corporation,** | |
| Defendants | |

---

[1]    The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105 AND 363(B) AND BANKRUPTCY RULES 6004 AND 9019
APPROVING ENTRY INTO A SETTLEMENT AGREEMENT WITH
NEVAKAR, INC. AND NEVAKAR INJECTABLES, INC.**

Endo International plc and its debtor affiliates, as debtors and debtors in possession

(collectively, the "Debtors" and, together with their non-debtor affiliates, the "Company") in the

above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby move (the "Nevakar Motion")

this Court for entry of an agreed order substantially in the form attached hereto as Exhibit A (the

"Order"), under sections 105 and 363(b) of title 11 of the United States Code (the "Bankruptcy

Code"), and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") approving the entry by the Debtors into that certain Settlement Agreement and Mutual

Release of Claims (the "Settlement Agreement"), by and among Debtor Endo Ventures Limited,

Inc. ("EVL") and Nevakar, Inc. and Nevakar Injectables, Inc. (together, "Nevakar").

In support of the Motion, the Debtors rely upon and incorporate by reference the

Declaration of Mark Bradley in Support of the Motion (the "Company Declaration"), attached

hereto as Exhibit B.   In further support of the Motion, the Debtors, by and through their

undersigned counsel, respectfully represent:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157

and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this

Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are Bankruptcy Code

sections 105 and 363(b) and Bankruptcy Rules 9019 and 6004.

## BACKGROUND

**A.      The Chapter 11 Cases**

3.      On August 16, 2022, EVL, along with certain of its affiliates, commenced the Chapter 11 Cases by filing petitions for relief under chapter 11 of the Bankruptcy Code.

4.      On August 17, 2022, the Court entered an order authorizing the joint administration and procedural consolidation of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

5.      The Debtors are authorized to continue to operate their businesses and to manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On September 2, 2022, the U.S. Trustee appointed an Official Committee of Unsecured Creditors (the "UCC") and an Official Committee of Opioid Claimants (the "OCC") in the Chapter 11 Cases.  No trustee or examiner has been appointed in the cases.

7.      Additional factual background regarding the Debtors when these cases were commenced, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the First Day Declaration of Mark Bradley.  [Docket No. 38.]

**B.      The 2018 Agreement and 2022 Agreement**

8.      On June 14, 2018, EVL and Nevakar, Inc. entered into the Development, License and Commercialization Agreement (the "2018 Agreement").  Under the terms of the 2018 Agreement, Nevakar, Inc. agreed to develop five products, while EVL would commercialize those products after regulatory approval had been received.  Pursuant to the 2018 Agreement, EVL and Nevakar, Inc. had distinct roles, leading up to the ultimate introduction of a product to market. EVL made certain lump sum payments to Nevakar, Inc. upon execution of the 2018 Agreement

3

and when certain regulatory milestones were achieved. After commercial launch of a product, EVL would pay Nevakar, Inc. a royalty, which varied by product. The 2018 Agreement was amended in writing on four occasions, and was subsequently assigned by Nevakar, Inc. to Nevakar Injectables, Inc.

9.      On April 29, 2022, EVL and Nevakar Injectables, Inc. entered into the Asset Purchase Agreement dated as of April 29, 2022 (the "2022 Agreement"). Pursuant to the 2022 Agreement, certain patents and patent applications, contracts, tangible assets, product technology, and books and records were transferred from Nevakar Injectables, Inc. to EVL. The 2022 Agreement also required Nevakar Injectables, Inc. to provide technical documentation, information, support, and/or assistance as necessary under the 2022 Agreement.

## C.      The Adversary Proceeding

10.     On August 11, 2022, Nevakar sent a letter to EVL purporting to terminate the 2018 Agreement (the "August Termination").

11.     On August 22, 2022, EVL filed an adversary complaint (the "Complaint"), asserting, *inter alia*, a cause of action for declaratory judgment that Nevakar's August Termination was invalid and asserting that Nevakar Injectables, Inc. was in breach of the 2022 Agreement. The adversary proceeding is captioned *Endo Ventures Limited v. Nevakar, Inc. and Nevakar Injectables, Inc.*, Adv. Proc. No. 22-07034 (JLG) (Bankr. S.D.N.Y.) (the "Litigation"). Nevakar filed its Answer, Defenses, and Counterclaims to the Complaint on September 6, 2022 alleging, among other things, that the August Termination is valid and that EVL had breached the 2018 Agreement. *See* the Litigation, Docket No. 18.

12.     On September 22, 2022, the Bankruptcy Court entered the Stipulation And Consent Order Preserving Status Quo And Governing Scheduling For Permanent Injunction Hearing [the Litigation, Docket No. 20] (the "Stipulation And Consent Order"). The Stipulation

4

And Consent Order set an expedited schedule for the parties' dispute concerning the August

Termination and provided that in the interim, the 2018 Agreement would be treated as though it

was in effect pending the Bankruptcy Court's resolution of the dispute.

D.      **The Settlement Agreement**

13.     After concluding fact discovery and expert discovery in the Litigation, and

while preparing their extensive pretrial filings, EVL and Nevakar entered settlement negotiations,

which generated multiple successive counteroffers by each side.

14.     Ultimately, in November 2022, EVL and Nevakar reached agreement on

the principal terms of a settlement to resolve the Litigation subject to further definitive

documentation.   On December 21, 2022, EVL and Nevakar entered into a formal Settlement

Agreement and Mutual Release of Claims (the "Settlement Agreement") memorializing the terms

of the settlement.  As a condition to the effectiveness of the Settlement Agreement, EVL is required

to seek this Court's approval pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy

Rule 9019.

15.     Under the Settlement Agreement, which is attached hereto as Exhibit C, the

parties agreed to make certain amendments to the 2018 Agreement in the form of a Fifth

Amendment to the 2018 Agreement (the "Fifth Amendment," and the 2018 Agreement as amended

by the Fifth Amendment, the "Amended 2018 Agreement").[2]

16.     In particular, under the Settlement Agreement, the commercialization rights

to two of the products previously licensed to Endo will be terminated.  The licensing arrangement

to the other three products will continue in a modified form.

---

[2]      The Fifth Amendment is attached as Exhibit A to the Settlement Agreement.

17.     With respect to three products to which EVL will retain a modified license, Nevakar agreed to grant EVL an exclusive (even as to Nevakar), fully-paid, perpetual, worldwide and irrevocable license (with the right to sublicense) to manufacture, have manufactured, develop, distribute, have distributed, use, market, have marketed, sell, have sold, import and commercialize the products.  (*See* Fifth Amendment Art. 2.1(a) (modifying definition of Products to cover only the 3 products); 2.2(a) (granting EVL the exclusive license)).  As a result, EVL would effectively receive sole control of the commercialization of these three products throughout the world. Additionally, the royalty rate on these three products would be reduced from a higher level under the original 2018 Agreement to a significantly lower level under the Amended 2018 Agreement, calculated based upon an agreed schedule of "Acquisition Cost."  (*See* Fifth Amendment Art. 2.6(a), Ex. A.)

18.     Under the Amended 2018 Agreement, EVL also would not be required to pay any milestone payments to Nevakar for any of the products.  (*See* Fifth Amendment Art. 2.6(b) (deleting obligation to make milestone payments in the 2018 Agreement)).

19.     Additionally, and perhaps most importantly, Nevakar and EVL have agreed that neither party would have the right to terminate, rescind or reform the Amended 2018 Agreement as a remedy for the other party's breach.  (*See* Fifth Amendment Art. 2.10.) Accordingly, EVL's license rights to the three products it is retaining would be preserved, notwithstanding any arguments that Nevakar could subsequently bring that EVL is in breach of the Amended 2018 Agreement.  This concession limits the parties to disputes over damages and equitable relief that does not change the substance of their agreement or allow a future termination of the licenses.

20.     With respect to the two remaining products, EVL agreed to relinquish its existing license permitting all rights to revert to Nevakar as licensor and allowing Nevakar to find a new partner to commercialize them if it chooses, without further consideration to EVL.  (*See* Fifth Amendment Art. 2.2(a).)

21.     The Settlement Agreement also contains a number of other provisions to implement the arrangement from this point forward including, without limitation, the sale of certain materials and assignment of certain related agreements.  The parties also agreed to provide each other a mutual release and terminate the 2022 Agreement.  (*See* Settlement Agreement §§ 5, 7.)

## RELIEF REQUESTED

22.     By this Motion, the Debtors seek entry of an order substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to Bankruptcy Code sections 105(a) and 363(b) and Bankruptcy Rules 6004 and 9019 authorizing EVL to enter into the Settlement Agreement.  For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in interest, and therefore, should be granted.

## APPLICABLE AUTHORITY

23.     This Court has discretion to approve the Debtors' entry into the Settlement Agreement under Bankruptcy Code section 363 after notice and a hearing.  *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1066 (2d Cir. 1983).  The procedure for approving a settlement in bankruptcy is set forth in Bankruptcy Rule 9019, which states:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and

> indenture trustees as provided in Rule 2002 and to any other entity
> as the court may direct.

Fed. R. Bankr. P. 9019(a).

**E.    The Debtors' Entry into the Settlement Should be Approved Under Bankruptcy
Code Section 363**

24.    Under Bankruptcy Code section 363(b)(1), a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In determining whether to authorize a debtor to use property under Bankruptcy Code section 363(b)(1), courts require the debtor to demonstrate that a sound business purpose justifies its actions. *See In re Lionel Corp.*, 722 F.2d at 1071.

25.    Once the debtor has articulated a valid business purpose, courts consider whether relief is justified under the business judgment rule. *See id.* "The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule has "vitality" in chapter 11 cases and presumes that a debtor's management decisions are reasonable. *See In re Integrated Res.*, 147 B.R. at 656; *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

26.    In this case, the Settlement Agreement is fair, reasonable, and in the best interest of the Debtors' estates. EVL faced a risk in the Litigation of an adverse finding: (1) that Nevakar properly terminated the 2018 Agreement, and/or (2) that EVL materially breached the

8

2018 Agreement, which could entitle Nevakar to revoke all of the rights and licenses granted to EVL under the 2018 Agreement with respect to the applicable products.

27.     Separate and apart from the Litigation concerning the purported termination of the 2018 Agreement and alleged breaches, Nevakar maintained (and EVL disputed) that Nevakar has potential challenges to the assumption and assignment of the 2018 Agreement and 2022 Agreement.  EVL therefore faced potential litigation in connection with those issues as well.

28.     The settlement resolves all disputes between EVL and Nevakar.  Under the Settlement Agreement, EVL will have exclusive freedom to develop and commercialize three of the products without a need to coordinate with Nevakar in the future and with a substantially reduced royalty rate and no obligation to make milestone payments.  (*See* Fifth Amendment Art. 2.1(b) (modifying definition of Products to cover only the 3 products); 2.2(a) (granting EVL the exclusive license); 2.6(a) (reducing royalty rate); 2.6(b) (deleting milestone payment obligation)). This provides certainty that EVL will benefit from the commercialization of a majority of the products covered by the 2018 Agreement, as opposed to the risk that EVL could lose all rights that exist under the 2018 Agreement should Nevakar be found at trial to have validly terminated that agreement.

29.     Moreover, even if EVL prevailed at trial, the most it could hope for would be that the Court would declare the termination invalid, affirming that the 2018 Agreement remained in effect.  Thus, a litigation victory would require EVL to continue its fraught relationship with Nevakar.  EVL would continue to face the risk that Nevakar could, in the future, allege that some other breach justified termination of the 2018 Agreement.  (*See* Company Decl. ¶ 16.)  It also risked potential litigation in connection with assumption and assignment of the 2018 Agreement and 2022 Agreement.

30.    Instead, by virtue of the Settlement Agreement, EVL can restructure the nature of its relationship with Nevakar, without fear of such future litigation.  (*See id.*).  Under the terms of the Fifth Amendment, Nevakar would be denied any right to terminate, or seek rescission or reformation of, the Amended 2018 Agreement.  (*See* Fifth Amendment Art. 2.10.)  Thus, EVL will obtain much greater certainty that it may continue to invest in the development of its products without a challenge by Nevakar later that could deprive EVL of its three licensed products.

31.    Moreover, the terms of the Settlement Agreement were comprehensively negotiated by the parties, who were advised and represented by separate and sophisticated counsel. EVL was represented by O'Melveny and Myers LLP and Skadden, Arps, Slate, Meagher and Flom LLP.  (*See* Settlement Agreement § 12.)  To reach a settlement, the parties exchanged numerous proposals over multiple weeks and were well-informed regarding the merits of their litigation positions, having completed fact and expert discovery, which included the review and production of thousands of documents and 13 depositions, and having filed direct testimony declarations of three fact and two expert witnesses per side, hundreds of supporting exhibits, and detailed pretrial briefs.  (*See* Company Decl. ¶ 10.)

**F.    The Settlement Agreement Should be Approved Under Bankruptcy Rule 9019**

32.    Moreover, this Court has authority to approve the Settlement Agreement pursuant to Bankruptcy Rule 9019.  Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Bankruptcy Rule 9019(a).  Settlements and compromises are "a normal part of the process of reorganization."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)); *see also In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005)

(decision to accept or reject settlement lies within sound discretion of bankruptcy court), *adhered to on reconsideration*, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

33.     Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate when the compromise is fair and equitable and is in the best interests of a debtor's estate.  *See, e.g.*, *TMT Trailer Ferry*, 390 U.S. at 424; *In re Adelphia Commc'ns*, 327 B.R. at 159 ("The settlement need not be the best that the debtor could have obtained.  Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'" (citations omitted) (quoting *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979)); *Nellis v. Shugrue*, 165 B.R. 115, 121 (S.D.N.Y. 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is in the best interest of an estate before approving it.")).  In general, compromises in the bankruptcy context should be approved unless they "'fall[] below the lowest point in the range of reasonableness.'"  *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

34.     Courts in this district have considered the following factors when determining whether a proposed settlement or compromise is in the best interests of a debtor's estate: (a) the balance between the likelihood of plaintiff's or defendants' success should the case go to trial vis-à-vis the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures; (b) the prospect of complex and protracted litigation if the settlement is not approved; (c) the proportion of the class members who do not object or who affirmatively support the proposed settlement; (d) the competency and experience of counsel who support the settlement; (e) the relative benefits to be received by individuals or groups within the class; (f) the nature and breadth of releases to be obtained by the directors and officers as a result of the settlement; and (g) the extent to which the settlement is

truly the product of arm's-length bargaining, and not of fraud or collusion.  *See Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (citing *TMT Trailer Ferry*, 390 U.S. at 424-25); *In re Adelphia Commc'ns*, 327 B.R. at 159-60; *accord In re Texaco Inc.*, 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

35.     A bankruptcy court need not determine that all of the foregoing factors favor approval of a compromise, and the proposed compromise need not be the best agreement that the debtor could have achieved under the circumstances.  *See In re Adelphia Commc'ns*, 327 B.R. at 159-60; *Penn Cent. Transp. Co.*, 596 F.2d at 1102, 1114.  Instead, the bankruptcy court's "role is to determine whether the settlement as a whole is fair and equitable," *In re Lee Way Holding Co.*, 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990), and to ascertain whether the settlement falls "within the reasonable range of litigation possibilities." *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (citation omitted).  To that end, bankruptcy courts should not substitute their own judgment for that of the debtor, but rather should "canvass the issues" to affirm that the proposed settlement falls above "the lowest point in the range of reasonableness." *In re Adelphia Commc'ns*, 327 B.R. at 159 (quoting *In re W.T. Grant Co.*, 699 F.2d at 608 ); *accord Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd sub nom. Sobchack v. Am. Nat'l Bank & Tr. Co. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600 (2d Cir. 1994).

36.     Here, the Settlement Agreement is in the best interest of the Debtors' estates.  The Settlement Agreement provides EVL an exclusive and irrevocable license to three of the five products covered in the 2018 Agreement with significantly reduced royalty payments and no milestone payment obligation.  The Settlement Agreement also avoids further protracted litigation, which could result in costly attorney's fees and other costs and expenses.  Furthermore,

the Settlement Agreement allows the Debtors to avoid the risk of an adverse decision in the

Litigation, and also eliminates the risk of future litigation concerning a subsequent termination of

the 2018 Agreement by Nevakar and potential challenges to assumption and assignment of the

2018 Agreement and 2022 Agreement.  For these reasons, and all the reasons described above, the

Settlement Agreement exceeds the lowest range of reasonableness, the Court's proper inquiry at

this stage, and therefore the Settlement Agreement should be approved under Bankruptcy Rule

9019(a).

**G.**      **The Court Should Approve the Assumption and Rejection of Contracts in Connection With the Settlement Agreement**

37.      Bankruptcy Code section 365(a) provides that a debtor, "subject to the

court's approval, may assume or reject any executory contract or unexpired lease."  11 U.S.C.

§ 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *Med. Malpractice Ins.*

*Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 386 (2d Cir. 1997).  The Court may approve a

debtor's decision to assume or reject an executory contract if such decision is made in the exercise

of the debtor's sound business judgment.  *See Orion Pictures Corp. v. Showtime Networks, Inc.*

*(In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993); *Bethlehem Steel Corp. v. BP*

*Energy Co. (In re Bethlehem Steel Corp.)*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003) ("The

purpose of section 365(a) is to allow the debtor to benefit from those contracts that are profitable

and reject those which are unprofitable, thereby maximizing the value of the debtor's estate."); *see*

*also NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (holding that

proper test for rejection was business judgment test), *aff'd*, 465 U.S. 513 (1984).

38.      The "business judgment" test merely requires a showing that either

assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.

*See In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) ("To meet the business judgment test,

the debtor in possession must 'establish that rejection will benefit the estate.'" (citation omitted));
*In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992).  Courts generally will not second-guess a debtor's business judgment concerning whether the assumption or rejection of an executory contract or unexpired lease would benefit the debtor's estate.  *See In re Balco Equities Ltd.*, 323 B.R. 85, 98 (Bankr. S.D.N.Y. 2005) ("A court 'should defer to a debtor's decision that rejection of a contract would be advantageous unless the decision is so unreasonable that it could not be based on sound business judgment, but only on bad faith or whim.'" (citations omitted)); *accord Phar-Mor, Inc. v. Strouss Bldg. Assocs.*, 204 B.R. 948, 951-52 (N.D. Ohio 1997) ("Whether an executory contract is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor.  Courts should generally defer to a debtor's decision whether to reject an executory contract." (citations omitted)).

39.     The Settlement Agreement requires the assumption and assignment of certain of the Debtors' executory contracts and/or unexpired leases (the "Contracts")[3] to Nevakar. Further, the Debtors may have no use for any Contracts related to Nevakar's products that Nevakar does not wish to have assigned to it.  Any such Contracts may be rejected to prevent further administrative expense accrual.  To that end, in the Proposed Order, the Debtors have proposed to establish procedures (the "Contract Procedures") by which they may provide notice to contract counterparties of a decision to assume or reject Contracts in connection with the Settlement Agreement.

---

[3]     For the avoidance of doubt, the term "Contracts" expressly does not include the Settlement Agreement, the 2022 Agreement, or the Amended 2018 Agreement.

14

**H.       The Contract Procedures Are Appropriate Under Applicable Bankruptcy Rules**

40.       As a procedural matter, Bankruptcy Rule 9014 provides, in relevant part, that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a).  The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for a hearing are given in light of the particular circumstances.  *See* 11 U.S.C. § 102(1)(A) (defining "'after notice and a hearing', or a similar phrase" to mean "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances").  Under Bankruptcy Rule 6006(e), a debtor may join requests for authority to assume or reject multiple executory contracts or unexpired leases in one omnibus motion, subject to Bankruptcy Rule 6006(f).  *See* Fed. R. Bankr. P. 6006(e).

41.       Furthermore, the counterparties to the Contracts will suffer no prejudice under the Contract Procedures.  Under Bankruptcy Rule 6006(f), a motion to assume or reject multiple executory contracts or unexpired leases that are not between the same parties must (i) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion; (ii) list parties alphabetically and identify the corresponding contract or lease; (iii) specify the terms, including the curing of defaults, for each requested assumption or assignment; (iv) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment; (v) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and (vi) be limited to no more than 100 executory contracts or unexpired leases.  Fed. R. Bankr. P. 6006(f).  The purpose of Bankruptcy Rule 6006(f), as amended, is to protect the due process rights of counterparties to the Contracts, as counterparties

15

must be able to locate their Contracts and readily determine whether their Contracts are being assumed or rejected.

42.    The Debtors' Contract Procedures, including the information provided on the Assumption Notices and Rejection Notices, comply with all applicable requirements of Bankruptcy Rule 6006(f) and are reasonable and fair to Contract counterparties.  *See* Proposed Order ¶¶ 4, 9.

43.    For the reasons set forth above, the Debtors submit that the Contract Procedures are appropriate and should be approved and implemented in these Chapter 11 Cases, as the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in interest.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

44.    The Debtors also request that the Court waive any applicable stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

45.    Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a promise to pay any

16

claim, or (e) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

46.     Notice of this Motion will be provided in accordance with the procedures set forth in the *Order Granting Debtors' Motion for Order Authorizing the Establishment of Certain Notice, Case Management, and Administrative Procedures* [Docket No. 374] (the "Case Management Order").  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

47.     No previous request for the relief sought herein has been made to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE the Debtors respectfully request that this Court (a) enter the

Proposed Order in substantially the form attached hereto and (b) grant such other and further relief

as may be just and proper.

Dated: December 23, 2022
      New York, New York            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                          By:    */s/ Abigail E. Davis*

                             SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                             Paul D. Leake
                             Abigail E. Davis
                             Jason N. Kestecher
                             Jacob G. Lefkowitz
                             One Manhattan West
                             New York, New York 10001
                             Telephone: (212) 735-3000
                             Fax: (212) 735-2000

                             *Counsel for Debtor Endo Ventures Limited*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc, *et al.*,** | **Case No. 22-22549 (JLG)** |
| **Debtors.**[1] | **Jointly Administered** |
| **ENDO VENTURES LIMITED, an Irish company,** | **Adv. Proc. No. 22-07034 (JLG)** |
| **Plaintiff,** | |
| **against** | |
| **NEVAKAR, INC., a Delaware corporation, and NEVAKAR INJECTABLES INC., a Delaware corporation,** | |
| **Defendants** | |

**ORDER GRANTING DEBTORS' MOTION FOR ORDER PURSUANT TO
BANKRUPTCY CODE SECTIONS 105 AND 363(B) AND BANKRUPTCY RULES 6004
AND 9019 APPROVING ENTRY INTO A SETTLEMENT AGREEMENT WITH
<u>NEVAKAR, INC. AND NEVAKAR INJECTABLES, INC.</u>**

Upon the motion (the "<u>Motion</u>") of Endo International plc and its debtor affiliates,

as debtors and debtors in possession (collectively, the "<u>Debtors</u>" and, together with their non-

debtor affiliates, the "<u>Company</u>") for an order in the above-captioned chapter 11 cases (the

"<u>Chapter 11 Cases</u>"), under sections 105 and 363(b) of title 11 of the United States Code (the

---

[1]    The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

"Bankruptcy Code"), and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing, but not directing, Debtors to enter into that certain Settlement Agreement and Mutual Release of Claims (the "Settlement Agreement"), by and among Debtor Endo Ventures Limited, Inc. ("EVL"), Nevakar, Inc. and Nevakar Injectables, Inc. (together, "Nevakar"); and upon the Declaration of Mark Bradley in Support of the Motion (the "Company Declaration"); and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their creditors, their stakeholders, and other parties in interest; and after due deliberation thereon, and sufficient cause appearing therefor, it is hereby,

**ORDERED, ADJUDGED AND DECREED that:**

1.      The Motion is **GRANTED** to the extent set forth herein.

2.      EVL is authorized to enter into and perform under the Settlement Agreement pursuant to sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

3.      Any settlement or compromise by EVL contained within the Settlement Agreement is approved under Bankruptcy Rule 9019.

4.      The Settlement Agreement and Fifth Amendment were negotiated at arm's-length and in good faith, and at all times each of the Debtors and Nevakar was represented by competent counsel of their choosing.  The consideration provided by each party pursuant to the Settlement Agreement and Fifth Amendment is fair and reasonable.  Entry into the Settlement Agreement and Fifth Amendment is not the result of fraud or collusion.

5.      The Debtors are authorized to implement the following approved procedures (the "Assumption Procedures") in connection with the assumption and the assumption and assignment of Contracts as may be required pursuant to the Settlement Agreement:

2

(a)     Assumption Notice.  The Debtors will file a notice to assume any Contract (the "Assumption Notice"), substantially in the form annexed hereto as Exhibit 1, which shall set forth the following information, based on the best information available to the Debtors and as applicable: (i) the Contract(s) to be assumed; (ii) the name(s) and address(es) of the counterparties to such Contract(s); (iii) the identity of the proposed assignee of such Contract(s) (the "Assignee"), if applicable; (iv) the proposed effective date of the assumption for each such Contract (the "Assumption Date"), which date may not be before the date of service of the Assumption Notice; (v) the proposed cure amount, if any; and (vi) the deadlines and procedures for filing objections to the Assumption Notice, as set forth below.

(b)     Service of the Assumption Notice.  The Debtors will cause the Assumption Notice to be served upon the following parties (collectively, the "Assumption Notice Parties"), in the following manner: (i) by overnight delivery service, email, or fax on any non-Debtor Contract counterparty affected by the Assumption Notice, (ii) by first class mail, email or fax upon (a) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Paul Schwartzberg (paul.schwartzberg@usdoj.gov); (b) Gibson, Dunn & Crutcher, 200 Park Avenue, New York, NY 10166, Attn: Scott J. Greenberg (sgreenberg@gibsondunn.com), Michael J. Cohen (mcohen@gibsondunn.com), and Joshua K. Brody (jbrody@gibsondunn.com), as counsel to the Ad Hoc First Lien Group; (c) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036, Attn: Kenneth H. Eckstein (keckstein@kramerlevin.com), Amy Caton (acaton@kramerlevin.com), Rachael L. Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), and Megan Wasson (mwasson@kramerlevin.com), as counsel to the Official Committee of Unsecured Creditors; (d) Cooley LLP, 55 Hudson Yards, New York, NY 10001, Attn: Cullen D. Speckhart (cspechart@cooley.com), Summer McKee (smckee@cooley.com), and Evan Lazerowitz (elazerowitz@cooley.com), as lead counsel to the Official Committee of Opioid Claimants; (e) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: James L. Patton, Jr. (jpatton@ycst.com), Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sean T. Greecher (sgreecher@ycst.com) and Frankel Wyron LLP, 2101 L Street, NW, Suite 800 Washington, DC 20037, Attn: Richard H. Wyron (rwyron@frankelwyron.com), as co-counsel to the Future Claimants Representative; and (f) Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: James C. Tecce (jamestecce@quinnemanuel.com), Andrew Berdon (andrewberdon@quinnemanuel.com), and Daniel Holzman (danielholzman@quinnemanuel.com); and (iii) to the extent not listed herein, upon any such other party entitled to notice pursuant to Local Bankruptcy Rule 9013- 1(b).

(c)     Objection Procedures.  Parties objecting to a proposed rejection of a Contract must file and serve a written objection so that such objection is filed with this Court and is actually received by the following parties (collectively, the "Objection Service Parties") no later than fourteen (14) calendar days after the date the Debtors serve the relevant Rejection Notice: (i) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Paul Schwartzberg (paul.schwartzberg@usdoj.gov); (ii) Gibson, Dunn & Crutcher, 200 Park Avenue, New York, NY 10166, Attn: Scott J. Greenberg (sgreenberg@gibsondunn.com), Michael J. Cohen (mcohen@gibsondunn.com), and Joshua K. Brody (jbrody@gibsondunn.com), as counsel to the Ad Hoc First Lien Group; (iii) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036, Attn: Kenneth H. Eckstein (keckstein@kramerlevin.com), Amy Caton (acaton@kramerlevin.com), Rachael L. Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), and Megan Wasson (mwasson@kramerlevin.com), as counsel to the Official Committee of Unsecured Creditors; (iv) Cooley LLP, 55 Hudson Yards, New York, NY 10001, Attn: Cullen D. Speckhart (cspechart@cooley.com), Summer McKee (smckee@cooley.com), and Evan Lazerowitz (elazerowitz@cooley.com), as lead counsel to the Official Committee of Opioid Claimants; (v) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: James L. Patton, Jr. (jpatton@ycst.com), Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sean T. Greecher (sgreecher@ycst.com) and Frankel Wyron LLP, 2101 L Street, NW, Suite 800, Washington, DC 20037, Attn: Richard H. Wyron (rwyron@frankelwyron.com), as co-counsel to the Future Claimants Representative; and (w) Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: James C. Tecce (jamestecce@quinnemanuel.com),          Andrew          Berdon (andrewberdon@quinnemanuel.com),          and          Daniel          Holzman (danielholzman@quinnemanuel.com).

(d)     No Objection.  If no objection to the assumption of a Contract is timely filed in compliance with subparagraph (c) of this paragraph, then (i) the Debtors' proposed cure amount with respect to such Contract shall be binding upon the non-debtor counterparty to the Contract for all purposes in these Chapter 11 Cases and (ii) such Contract shall be deemed assumed as of the Assumption Date set forth in the Assumption Notice, unless (a) the Debtors withdraw such Assumption Notice on or prior to the Assumption Date or (ii) the Debtors and the pertinent counterparty or counterparties agree, prior to the Assumption Date, upon another such date.

(e)     Unresolved Objections.  If an objection to the assumption of any Contract is timely filed and not withdrawn or resolved, the Debtors shall file a notice for a hearing to consider the objection for the Contract(s) to which such objection relates.  If such objection is overruled or withdrawn, such Contract(s) shall be assumed as of the Assumption Date set forth in the Assumption Notice, unless (a) the Debtors withdraw such Assumption Notice on or prior to the Assumption Date or (ii) the

Debtors and the pertinent counterparty or counterparties agree, prior to the Assumption Date, upon another such date.

6.     With regard to Contracts to be assigned, pursuant to Bankruptcy Code section 363(f), the assignment of any Contract shall: (a) be free and clear of (i) all liens (and any liens shall attach to the proceeds in the same order and priority subject to all existing defenses, claims, setoffs, and rights) and (ii) any and all claims (as that term is defined in Bankruptcy Code section 101(5)), obligations, demands, guarantees of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, claims, and encumbrances (A) that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Contract(s), or (B) in respect of any taxes); and (b) constitute a legal, valid, and effective transfer of such Contract(s) and vest the applicable Assignee with all rights, titles, and interests to the applicable Contract(s).

7.     Subject to and conditioned upon a closing with respect to the assumption and assignment of any Contract, and subject to the other provisions of this Order (including the aforementioned Assumption Procedures), the Debtors are hereby authorized in accordance with Bankruptcy Code sections 365(b) and (f) to (a) assume and assign to any Assignees the applicable Contract(s), with any applicable Assignee being responsible only for the post-closing liabilities under the applicable Contract(s) except as otherwise provided for in this Order and (b) execute and deliver to any applicable Assignee such assignment documents as may be reasonably necessary to sell, assign and transfer such Contract(s).

8.      The Debtors' right to assert that any provisions in a Contract that expressly or effectively restrict, prohibit, condition or limit the assignment of or the effectiveness of such Contract are unenforceable anti-assignment or *ipso facto* clauses is fully reserved.

9.      The Amended 2018 Agreement shall be deemed assumed by EVL pursuant to section 365 of the Bankruptcy Code upon this Order becoming final and non-appealable (the "Settlement Effective Date").   For the avoidance of doubt, (a) the cure amounts under the Amended 2018 Agreement on the Settlement Effective Date shall be $0.00, subject to there being no outstanding payments under Section 6 of the Settlement Agreement, and (b) upon the Settlement Effective Date, Nevakar consents to the Debtors' assignment of any of the Settlement Documents and the Amended 2018 Agreement to any person at any time during the pendency of the Chapter 11 Cases in accordance with Section 11 of the Settlement Agreement.

10.     The 14-day stay required of any assignment of any Contract pursuant to Bankruptcy Rule 6006(d) is hereby waived.

11.     The Debtors are authorized to implement the following approved procedures (the "Rejection Procedures") in connection with the rejection of any Contract of the Debtors in connection with the Settlement Agreement:

(a)     Rejection Notice.  The Debtors will file a notice to reject any Contract (the "Rejection Notice"), substantially in the form annexed as Exhibit 2 hereto, which shall set forth the following information, based on the best information available to the Debtors and as applicable: (i) the Contract(s) that the Debtors seek to reject; (ii) the name(s) and address(es) of the counterparties to such Contract(s); (iii) the proposed effective date of the rejection for each such Contract (the "Rejection Date"), which date may not be before the date of service of the Rejection Notice; and (iv) the deadlines and procedures for filing objections to the Rejection Notice, as set forth below.

(b)     Service of the Rejection Notice.  The Debtors will cause the Rejection Notice to be served upon the following parties (collectively, the "Rejection Notice Parties"), in the following manner: (i) by overnight delivery service, email, or fax on any non-Debtor Contract counterparty affected by the Rejection Notice, and (ii) by

6

first class mail, email or fax upon (a) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Paul Schwartzberg (paul.schwartzberg@usdoj.gov); (b) Gibson, Dunn & Crutcher, 200 Park Avenue, New York, NY 10166, Attn: Scott J. Greenberg (sgreenberg@gibsondunn.com), Michael J. Cohen (mcohen@gibsondunn.com), and Joshua K. Brody (jbrody@gibsondunn.com), as counsel to the Ad Hoc First Lien Group; (c) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036, Attn: Kenneth H. Eckstein (keckstein@kramerlevin.com), Amy Caton (acaton@kramerlevin.com), Rachael L. Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), and Megan Wasson (mwasson@kramerlevin.com), as counsel to the Official Committee of Unsecured Creditors; (d) Cooley LLP, 55 Hudson Yards, New York, NY 10001, Attn: Cullen D. Speckhart (cspechart@cooley.com), Summer McKee (smckee@cooley.com), and Evan Lazerowitz (elazerowitz@cooley.com), as lead counsel to the Official Committee of Opioid Claimants; and (e) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: James L. Patton, Jr. (jpatton@ycst.com), Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sean T. Greecher (sgreecher@ycst.com) and Frankel Wyron LLP, 2101 L Street, NW, Suite 800 Washington, DC 20037, Attn: Richard H. Wyron (rwyron@frankelwyron.com), as co-counsel to the Future Claimants Representative.

(c)     Objection Procedures. Parties objecting to a proposed rejection of a Contract must file and serve a written objection so that such objection is filed with this Court and is actually received by the Objection Service Parties no later than fourteen (14) calendar days after the date the Debtors serve the relevant Rejection Notice.

(d)     No Objection. If no objection to the rejection of a Contract is timely filed in compliance with subparagraph (c) of this paragraph, such Contract shall be deemed rejected as of the applicable Rejection Date set forth in the Rejection Notice, without further notice, hearing, or order of this Court, unless (i) the Debtors withdraw such Rejection Notice on or prior to the Rejection Date or (ii) the Debtors and the pertinent counterparty or counterparties agree, prior to the Rejection Date, upon another such date.

(e)     Unresolved Objections. If a timely objection is filed that cannot be resolved, the Debtors shall file a notice of hearing to consider the unresolved objection. If such objection is overruled or withdrawn, such Contract(s) shall be rejected as of the Rejection Date set forth in the Rejection Notice or such other date as the Debtors and the pertinent counterparty or counterparties otherwise agree.

(f)     No Application of Security Deposits. If the Debtors have deposited monies with a Contract counterparty as a security deposit or other arrangement, such Contract counterparty may not setoff, recoup, or otherwise use such monies without further

order of the Court, unless the Debtors and the counterparty or counterparties to such Contract(s) otherwise agree.

(g)   <u>Rejection Damages</u>.  Claims arising out of the rejection of Contracts, if any, must be filed on or before the later of (i) thirty (30) days after the Rejection Date and (ii) any applicable claims bar date for filing proofs of claim established in these Chapter 11 Cases.  If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for damages arising from the rejection and from participating in any distributions on such a claim that may be made in connection with these Chapter 11 Cases.

12.     All rights and defenses of the Debtors with respect to any Contract are preserved, including all rights and defenses of the Debtors with respect to any subsequently filed proof of claim for damages arising as a result of a Contract rejection, including, but not limited to, any right of the Debtors to assert an offset, recoupment, counterclaim, or deduction.  In addition, nothing in this Order or the Motion shall limit the Debtors' ability to subsequently assert that any particular Contract is terminated and/or is not an executory contract or unexpired lease, respectively.

13.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

14.     The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

15.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

16.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2022
          New York, New York

_____
THE HONORABLE JAMES L. GARRITY, JR
U.S. BANKRUPTCY JUDGE

8

## **EXHIBIT 1**

**Assumption Notice**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Paul D. Leake
Abigail E. Davis
Jason N. Kestecher
Jacob G. Lefkowitz
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Counsel for Debtor Endo Ventures Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc,** *et al.*, | **Case No. 22-22549 (JLG)** |
| **Debtors.**[2] | **Jointly Administered** |
| | |
| **ENDO VENTURES LIMITED, an Irish company,** | **Adv. Proc. No. 22-07034 (JLG)** |
| **Plaintiff,** | |
| **against** | |
| **NEVAKAR, INC., a Delaware corporation, and NEVAKAR INJECTABLES INC., a Delaware corporation,** | |
| **Defendants** | |

## NOTICE OF ASSUMPTION OF [A] CERTAIN EXECUTORY CONTRACT[S] [AND/OR UNEXPIRED LEASE[S]]

---

[2]    The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

1

**PLEASE TAKE NOTICE** that, on [_____], 2022, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the order [Docket o. ____] (the "Order") granting the motion (the "Motion")[2] of the Debtors authorizing and approving, among other things, procedures for the Debtors to assume and assign executory contracts and unexpired leases in connection with the Debtors' settlement agreement with Nevakar, Inc. and Nevakar Injectables, Inc. (each, a "Contract").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order and by this written notice (this "Assumption Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Contract set forth on Schedule 1 attached hereto is hereby assumed or assumed and assigned effective as of the date (the "Assumption Date") set forth in Schedule 1, or such other date as the Debtors and the counterparty or counterparties to such Contract(s) agree.

**PLEASE TAKE FURTHER NOTICE** that, the [Assignee], has the financial wherewithal to meet all future obligations under the Contract, which may be evidenced upon written request by the counterparty to the Contract, thereby demonstrating that the [Assignee] has the ability to comply with the requirements of adequate assurance of future performance.[3]

**PLEASE TAKE FURTHER NOTICE** that, the Debtors' records reflect the amounts owing, if any, for prepetition arrearages as set forth in Schedule 1 (the "Cure Amount").

**PLEASE TAKE FURTHER NOTICE** that, parties seeking to object to the Debtors' assumption or assumption and assignment of any Contract listed in Schedule 1 must file and serve a written objection, so that such objection is filed with the Court and is ***actually received***

---

[3]    The Debtors shall serve a counterparty to a Contract to be assumed under the Contract Procedures with evidence of adequate assurance upon such counterparty's written request to the Debtors' counsel.

2

no later than fourteen (14) calendar days after the date that the Debtors served this Assumption

Notice, upon the following parties: the Office of the United States Trustee, U.S. Federal Office

Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Paul Schwartzberg

(paul.schwartzberg@usdoj.gov); (b) Gibson, Dunn & Crutcher, 200 Park Avenue, New York,

NY 10166, Attn: Scott J. Greenberg (sgreenberg@gibsondunn.com), Michael J. Cohen

(mcohen@gibsondunn.com), and Joshua K. Brody (jbrody@gibsondunn.com), as counsel to the

Ad Hoc First Lien Group; (c) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the

Americas, New York, NY 10036, Attn: Kenneth H. Eckstein (keckstein@kramerlevin.com),

Amy Caton (acaton@kramerlevin.com), Rachael L. Ringer (rringer@kramerlevin.com), David

E. Blabey, Jr. (dblabey@kramerlevin.com), and Megan Wasson (mwasson@kramerlevin.com),

as counsel to the Official Committee of Unsecured Creditors; (d) Cooley LLP, 55 Hudson Yards,

New York, NY 10001, Attn: Cullen D. Speckhart (cspechart@cooley.com), Summer McKee

(smckee@cooley.com), and Evan Lazerowitz (elazerowitz@cooley.com), as lead counsel to the

Official Committee of Opioid Claimants; (e) Young Conaway Stargatt & Taylor, LLP, Rodney

Square, 1000 North King Street, Wilmington, DE 19801, Attn: James L. Patton, Jr.

(jpatton@ycst.com), Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com),

and Sean T. Greecher (sgreecher@ycst.com) and Frankel Wyron LLP, 2101 L Street, NW, Suite

800 Washington, DC 20037, Attn: Richard H. Wyron (rwyron@frankelwyron.com), as co-

counsel to the Future Claimants Representative; and (f) Quinn Emanuel Urquhart & Sullivan,

LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: James C. Tecce

(jamestecce@quinnemanuel.com), Andrew Berdon (andrewberdon@quinnemanuel.com), and

Daniel Holzman (danielholzman@quinnemanuel.com).

**PLEASE TAKE FURTHER NOTICE** that, absent an objection being timely filed, the assumption of any Contract listed on Schedule 1 shall become effective on the Assumption Date set forth in Schedule 1 without further notice, hearing or order of this Court, unless (i) the Debtors withdraw such Assumption Notice on or prior to the Assumption Date or (ii) the Debtors and the pertinent counterparty or counterparties agree, prior to the Assumption Date, upon another such date.[4]

**PLEASE TAKE FURTHER NOTICE** that, if a timely objection to the assumption of any Contract listed on Schedule 1 is timely filed and not withdrawn or resolved, the Debtors shall file a notice of hearing to consider the unresolved objection.  If such objection is overruled or withdrawn, such Contract(s) shall be assumed as of the Assumption Date set forth in Schedule 1 or such other date as the Debtors and the counterparty or counterparties to such Contract(s) agree.

Dated:  December [], 2022
         New York, New York

_____

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Paul D. Leake
Abigail E. Davis
Jason N. Kestecher
Jacob G. Lefkowitz
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

---

[4]    An objection to the assumption of any particular Contract listed in Schedule 1 to this Assumption Notice shall not constitute an objection to the assumption of any other Contract listed in Schedule 1. Any objection to the assumption of any particular Contract must state with specificity the Contract(s) to which it is directed.  For each particular Contract whose assumption is not timely or properly objected to, such assumption will be effective in accordance with this Assumption Notice and the Order.

**<u>SCHEDULE 1</u>**

**Assumed Contracts**

| Counterparty | Counterparty Address | Description of Contract | Cure Amount | Assumption Date |
|---|---|---|---|---|
|  |  |  |  |  |

## **EXHIBIT 2**

**Rejection Notice**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Paul D. Leake
Abigail E. Davis
Jason N. Kestecher
Jacob G. Lefkowitz
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Counsel for Debtor Endo Ventures Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| **ENDO INTERNATIONAL plc**, *et al.*, | Case No. 22-22549 (JLG) |
| **Debtors.**[5] | Jointly Administered |
| **ENDO VENTURES LIMITED, an Irish company,** | |
| **Plaintiff,** | Adv. Proc. No. 22-07034 (JLG) |
| **against** | |
| **NEVAKAR, INC., a Delaware corporation, and NEVAKAR INJECTABLES INC., a Delaware corporation,** | |
| **Defendants** | |

## NOTICE OF REJECTION OF [A] CERTAIN EXECUTORY CONTRACT[S] [AND/OR UNEXPIRED LEASE[S]]

---

[5]    The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

1

**PLEASE TAKE NOTICE** that, on [_____], 2022, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the order [Docket o. ___] (the "Order") granting the motion (the "Motion")[2] of the Debtors authorizing and approving, among other things, procedures for the Debtors to reject executory contracts and unexpired leases in connection with the Debtors' settlement agreement with Nevakar, Inc. and Nevakar Injectables, Inc. (each a "Contract").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order and by this written notice (this "Rejection Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Contract set forth on Schedule 1 attached hereto is hereby rejected effective as of the date (the "Rejection Date") set forth in Schedule 1, or such other date as the Debtors and the counterparty or counterparties to such Contract(s) agree.

**PLEASE TAKE FURTHER NOTICE** that, parties seeking to object to the Debtors' rejection of any Contract listed in Schedule 1 must file and serve a written objection, so that such objection is filed with the Court and is ***actually received*** no later than fourteen (14) calendar days after the date that the Debtors served this Rejection Notice, upon the following parties:

**PLEASE TAKE FURTHER NOTICE** that, absent an objection being timely filed, the rejection of any Contract listed on Schedule 1 shall become effective on the Rejection Date set forth in Schedule 1 without further notice, hearing or order of this Court, unless (i) the Debtors withdraw such Rejection Notice on or prior to the Rejection Date or (ii) the Debtors and the

pertinent counterparty or counterparties agree, prior to the Rejection Date, upon another such date as the Debtors and the counterparty or counterparties to such Contract(s) agree.[6]

 **PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order, if the Debtors have deposited monies with a Contract counterparty as a security deposit or other arrangement, the Contract counterparty may not set off or recoup or otherwise use such monies without further order of the Court, unless the Debtors and the counterparty or counterparties to such Contract(s) otherwise agree.

 **PLEASE TAKE FURTHER NOTICE** that, to the extent you wish to assert any claim(s) arising out of the rejection of your Contract(s) listed on <u>Schedule 1</u>, you must do so before the later of (i) thirty (30) days after the Rejection Date and (ii) any applicable claims bar date for filing proofs of claim established in these Chapter 11 Cases. **FAILURE TO TIMELY FILE ANY PROOF OF CLAIM SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED**.

Dated:  December [], 2022
   New York, New York

          _____

          SKADDEN, ARPS, SLATE, MEAGHER &
          FLOM LLP

          Paul D. Leake
          Abigail E. Davis
          Jason N. Kestecher
          Jacob G. Lefkowitz
          One Manhattan West
          New York, New York 10001
          Telephone: (212) 735-3000
          Fax: (212) 735-2000

---

[6] An objection to the rejection of any particular Contract listed in <u>Schedule 1</u> to this Rejection Notice shall not constitute an objection to the rejection of any other Contract listed in Schedule 1. Any objection to the rejection of any particular Contract must state with specificity the Contract to which it is directed. For each particular Contract whose rejection is not timely or properly objected to, such rejection will be effective in accordance with this Rejection Notice and the Order

## SCHEDULE 1

**Rejected Contracts**

| Counterparty | Counterparty Address | Description of Contract | Rejection Date |
|---|---|---|---|
|  |  |  |  |

**Exhibit B**

**Bradley Declaration**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Paul D. Leake
Abigail E. Davis
Jason N. Kestecher
Jacob G. Lefkowitz
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Counsel for Debtor Endo Ventures Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| **ENDO INTERNATIONAL plc,** *et al.***,** | Case No. 22-22549 (JLG) |
| Debtors.[1] | Jointly Administered |
| **ENDO VENTURES LIMITED, an Irish company,** | Adv. Proc. No. 22-07034 (JLG) |
| Plaintiff, | |
| against | |
| **NEVAKAR, INC., a Delaware corporation, and NEVAKAR INJECTABLES INC., a Delaware corporation,** | |
| Defendants | |

---

[1]     The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

**DECLARATION OF MARK BRADLEY IN SUPPORT OF
DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE
SECTIONS 105 AND 363(B) AND BANKRUPTCY RULES 6004 AND 9019
APPROVING ENTRY INTO A SETTLEMENT AGREEMENT WITH
NEVAKAR, INC. AND NEVAKAR INJECTABLES, INC.**

I, Mark Bradley, hereby declare under penalty of perjury that the following is true

to the best of my knowledge, information, and belief:

1.        I am the Chief Financial Officer of Endo International plc and its debtor

affiliates, as debtors and debtors in possession (collectively, the "Debtors" and, together with their

non-debtor affiliates, the "Company" or "Endo")  in the above-captioned chapter 11 cases (the

"Chapter 11 Cases").  Endo operates a global specialty biopharmaceutical business that produces

and sells both generic and branded products.

2.        I joined Endo in January 2007 as a Finance Director and have held several

prominent roles of increasing responsibility since joining Endo, including Senior Director of

Finance, Senior Vice President of Corporate Development, and Treasurer.  Prior to joining Endo,

I spent nearly seven years as a management consultant, most recently with Deloitte Consulting,

providing a broad range of strategic and operational advice and services to senior executives across

a number of industries.  In addition, I served as a Finance Director for an industrial products

company for approximately two years.  I spent the first five years of my career in public accounting

at Ernst & Young LLP and received my CPA in October 1993.  I hold a Bachelor of Science degree

in Accounting from Saint Joseph's University and a Master of Business Administration from The

University of Texas at Austin.

3.        I submit this declaration (the "Declaration") in support of the *Debtors'*

*Motion for Order Pursuant to Bankruptcy Code Sections 105 and 363(b) and Bankruptcy Rules*

*6004 and 9019 Approving Entry into a Settlement Agreement with Nevakar, Inc. and Nevakar*

*Injectables, Inc.* (the "Nevakar Motion"),[2] filed contemporaneously herewith.

4.     As a result of my time with the Debtors, my review of relevant documents, and my discussions with other members of the Debtors' management team and the Debtors' advisors, I am familiar with the subject matter of the Nevakar Motion.  Except as otherwise indicated, the statements in this Declaration are based on: (a) my personal knowledge of the Declaration's subject matter; (b) my review of relevant documents; (c) information provided to me by the Debtors' advisors working under my supervision; (d) information provided to me by, or discussions with, other members of the Debtors' management team or other employees; and/or (e) my general experience and knowledge.  I am authorized to submit this declaration.  If called upon to testify, I can and will testify competently as to the facts set forth herein.

**A.     The 2018 Agreement and 2022 Agreement**

5.     On June 14, 2018, EVL and Nevakar, Inc. entered into the Development, License and Commercialization Agreement (the "2018 Agreement").  Under the terms of the 2018 Agreement, Nevakar, Inc. agreed to develop five products, while EVL would commercialize those products after regulatory approval had been received.  Under the 2018 Agreement, EVL and Nevakar, Inc. had distinct roles, leading up to the ultimate introduction of a product to market.  EVL made certain lump sum payments to Nevakar, Inc. upon execution of the 2018 Agreement and when certain regulatory milestones were achieved.  After commercial launch of a product, EVL would pay Nevakar, Inc. a royalty which varied by product.  The 2018 Agreement was

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Nevakar Motion.

amended in writing on four occasions, and was subsequently assigned by Nevakar, Inc. to Nevakar Injectables, Inc.

6.     On April 29, 2022, EVL and Nevakar Injectables, Inc. entered into the Asset Purchase Agreement dated as of April 29, 2022 (the "2022 Agreement").  Pursuant to the 2022 Agreement, certain patents and patent applications, contracts, tangible assets, product technology, and books and records were transferred from Nevakar Injectables, Inc. to EVL.  The 2022 Agreement also required Nevakar Injectables, Inc. to provide technical documentation, information, support, and/or assistance as necessary under the 2022 Agreement.

**B.     The Adversary Proceeding**

7.     On August 11, 2022, Nevakar sent a letter to EVL purporting to terminate the 2018 Agreement (the "August Termination").

8.     On August 22, 2022, EVL filed an adversary complaint (the "Complaint"), asserting, *inter alia*, a cause of action for declaratory judgment that Nevakar's August Termination was invalid and asserting that Nevakar Injectables, Inc. was in breach of the 2022 Agreement.  The adversary proceeding is captioned *Endo Ventures Limited v. Nevakar, Inc. and Nevakar Injectables, Inc.*, Adv. Proc. No. 22-07034 (JLG) (Bankr. S.D.N.Y.) (the "Litigation"). Nevakar filed its Answer, Defenses, and Counterclaims to the Complaint on September 6, 2022 alleging, among other things, that the August Termination is valid and that EVL had breached the 2018 Agreement.  *See* the Litigation, Docket No. 18.

9.     On September 22, 2022, the Bankruptcy Court entered the Stipulation And Consent Order Preserving Status Quo And Governing Scheduling For Permanent Injunction Hearing [the Litigation, Docket No. 20] (the "Stipulation And Consent Order").  The Stipulation And Consent Order set an expedited schedule for the parties' dispute concerning the August

Termination and provided that in the interim, the 2018 Agreement would be treated as though it were in effect pending the Bankruptcy Court's resolution of the dispute.

### C.        The Settlement Agreement

10.       After concluding fact discovery and expert discovery in the Litigation, and while preparing their extensive pretrial filings, EVL and Nevakar entered settlement negotiations, which generated multiple successive counteroffers by each side.

11.       Ultimately, in November 2022, EVL and Nevakar reached agreement on the principal terms of a settlement to resolve the Litigation subject to further definitive documentation.   On December 21, 2022, EVL and Nevakar entered into a formal Settlement Agreement and Mutual Release of Claims (the "Settlement Agreement") memorializing the terms of the settlement.   As a condition to the effectiveness of the Settlement Agreement, EVL is required to seek this Court's approval pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

12.       Under the Settlement Agreement, the parties agreed to make certain amendments to the 2018 Agreement in the form of a Fifth Amendment to the 2018 Agreement (the "Fifth Amendment," and the 2018 Agreement as amended by the Fifth Amendment, the "Amended 2018 Agreement").

13.       In particular, under the Settlement Agreement, the commercialization rights to two of the products previously licensed to Endo will be terminated.   The licensing arrangement to the other three products will continue in a modified form.

14.       With respect to three products to which EVL will retain a modified license, Nevakar agreed to grant EVL an exclusive (even as to Nevakar), fully-paid, perpetual, worldwide and irrevocable license (with the right to sublicense) to manufacture, have manufactured, develop, distribute, have distributed, use, market, have marketed, sell, have sold, import and commercialize

the products.  (*See* Fifth Amendment Art. 2.1(a) (modifying definition of Products to cover only

the 3 products); 2.2(a) (granting EVL the exclusive license).)  As a result, EVL would effectively

receive sole control of the commercialization of these three products throughout the world.

Additionally, the royalty rate on these three products would be reduced from a higher level under

the original 2018 Agreement to a significantly lower level under the Amended 2018 Agreement,

calculated based upon an agreed schedule of "Acquisition Cost."  (*See* Fifth Amendment Art.

2.6(a), Ex. A.)

15.     Pursuant to the Amended 2018 Agreement, EVL also would not be required

to make any milestone payments to Nevakar for any of the products.  (*See* Fifth Amendment Art.

2.6(b) (deleting obligation to make milestone payments in the 2018 Agreement).)

16.     Additionally, and perhaps most importantly, Nevakar and EVL have agreed

that neither party would have the right to terminate, rescind or reform the Amended 2018

Agreement as a remedy for the other party's breach.  (*See* Fifth Amendment Art. 2.10.)

Accordingly, EVL's license rights to the three products it is retaining would be preserved,

notwithstanding any arguments that Nevakar could subsequently bring that EVL is in breach of

the Amended 2018 Agreement.  This concession limits the parties to disputes over damages and

equitable relief that does not change the substance of their agreement or allow a future termination

of the licenses.

17.     With respect to the two remaining products, EVL agreed to relinquish its

existing license, permitting all rights to revert back to Nevakar as licensor and allowing Nevakar

to find a new partner to commercialize them if it chooses, without further consideration to EVL.

(*See* Fifth Amendment Art. 2.2(a).)

18.     The Settlement Agreement also contains a number of other provisions to implement the arrangement from this point forward including, without limitation, the sale of certain materials and assignment of certain related agreements.  The parties also agreed to provide each other a mutual release and terminate the 2022 Agreement.  (*See* Settlement Agreement §§ 5, 7.)

19.     The Settlement Agreement is in the best interest of the Debtors' estates. The Settlement Agreement provides EVL an exclusive and irrevocable license to three of the five products covered in the 2018 Agreement with significantly reduced royalty payments and no milestone payment obligations.  The Settlement Agreement also avoids further protracted litigation, which could result in costly attorneys' fees and other costs and expenses.  Furthermore, the Settlement Agreement allows us to avoid the risk of an adverse decision in the Litigation, and also eliminates the risk of future litigation concerning a subsequent termination of the 2018 Agreement by Nevakar and potential challenges to assumption and assignment of the 2018 Agreement and 2022 Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

I declare under penalty of perjury that the Declaration is true and correct.

Dated:          December 23, 2022
                Malvern, Pennsylvania

                                By:    /s/ *Mark Bradley*
                                Name: Mark Bradley
                                Title:  Chief Financial Officer

## Exhibit C

**Settlement Agreement**

SIGNATURE VERSION

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("**Settlement Agreement,**" and with the exhibits annexed hereto and the Fifth Amendment (as defined below), the "**Settlement Documents**"), executed as of the date on which the third of the three Parties to do so signs this Settlement Agreement (the "**Execution Date**"), is by and between, on the one hand, Endo Ventures Limited, a corporation organized and existing under the laws of Republic of Ireland and having a principal place of business at First Floor, Minerva House, Simmonscourt Road, Ballsbridge, Dublin 4, Ireland ("**EVL**") and, on the other hand, Nevakar, Inc., a corporation organized and existing under the laws of the state of Delaware and having a principal place of business at 1019 Route 202-206, Bridgewater, NJ 08807, and Nevakar Injectables, Inc., a corporation organized and existing under the laws of the state of Delaware and having a principal place of business at 1019 Route 202-206, Bridgewater, NJ 08807 (collectively, "**Nevakar**").  EVL and Nevakar each are sometimes referred to herein individually as a "**Party**" and collectively referred to herein as "**Parties**."

## RECITALS

**A.**    WHEREAS, EVL and Nevakar, Inc. entered into the Development, License and Commercialization Agreement dated as of June 14, 2018, which was amended for the first time on July 19, 2019, for the second time on May 13, 2020, for the third time on September 1, 2021, and for a fourth time on May 19, 2022 (collectively, hereinafter the "**2018 Agreement**");

**B.**    WHEREAS, Nevakar, Inc. assigned the 2018 Agreement to Nevakar Injectables, Inc.;

**C.**    WHEREAS, EVL and Nevakar entered into the Asset Purchase Agreement dated as of April 29, 2022 ("**2022 Agreement**");

**D.**    WHEREAS, Nevakar sent a letter to EVL on August 11, 2022 purporting to terminate the 2018 Agreement ("**August Termination**"), and EVL disputes the validity of the August Termination;

**E.**    WHEREAS, EVL and certain of its affiliates (together, the "**Debtors**") filed bankruptcy cases (the "**Chapter 11 Cases**") before the United States Bankruptcy Court for the Southern District of New York (the "**Court**") under title 11 of the United Sates Code (the "**Bankruptcy Code**") on August 16, 2022, which cases are jointly administered and bear the caption *In re: Endo International plc, et al.*, Case No. 22-22549 (JLG) (Jointly Administered) (Bankr. S.D.N.Y.);

**F.**    WHEREAS, EVL filed an Adversary Complaint for Declaratory and Injunctive Relief, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Tortious Interference with Prospective Economic Advantage (the "**Complaint**") against Nevakar in the Court alleging causes of action related to the August Termination and breach of the 2022 Agreement, which adversary proceeding is captioned *Endo Ventures Limited v. Nevakar, Inc. and Nevakar Injectables, Inc.* (*In re Endo Int'l plc, et al.*), Adv.  Proc. No. 22-07034 (JLG) (the "**Adversary Proceeding**"), and on September 1, 2022, Nevakar filed the Defendants' Answer, Defenses, And Counterclaims To EVL's Adversary Complaint which, among other things,

disputes the allegations in the Complaint, seeks a declaration that the August Termination was valid; and brings claims for additional material breaches of the 2018 Agreement;

**G.**     WHEREAS, on September 22, 2022, the Court entered a Stipulation and Consent Order Preserving Status Quo and Governing Scheduling for Permanent Injunction Hearing in the Adversary Proceeding (Adv. Proc. ECF No. 20) ("**Stipulation and Consent Order**") which, among other things, set a schedule for an expedited litigation with respect to disputes concerning the validity of the August Termination;

**H.**     WHEREAS, the Court has extended the Termination Date provided in paragraph 2 of the Stipulation and Consent Order to January 9, 2023; and

**I.**     WHEREAS, EVL and Nevakar have agreed on a settlement in principle with respect to the Adversary Proceeding and desire to enter into the Settlement Documents.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in the Settlement Documents and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.     **9019 Order**.  EVL shall cause to be filed with the Court in the Chapter 11 Cases, using commercially reasonable efforts to be heard at a hearing scheduled for January 9, 2023 (or as soon thereafter as the Parties can be heard by the Court), a motion seeking an order by the court approving EVL's entry into the Settlement Documents pursuant to, inter alia, Federal Rule of Bankruptcy Procedure 9019, in a form reasonably acceptable to the Parties (the "**9019 Order**") which 9019 Order shall provide, among other things, that (a) the Debtors' entry into the Settlement Documents (including the Fifth Amendment (as defined below)) is approved, (b) the Debtors assume the Amended 2018 Agreement (as defined below) upon the 9019 Order becoming final and non-appealable (the "**Effective Date**"), and the cure amounts thereunder on the Effective Date shall be $0.00, subject to there being no outstanding payments under Section 6 of this Agreement, and (c) upon the Effective Date, Nevakar consents to the Debtors' assignment of any of the Settlement Documents and the Amended 2018 Agreement to any person at any time during the pendency of the Chapter 11 Cases in accordance with Section 11.

2.     **Stipulation and Consent Order**.  As SO-ORDERED on the record at the November 10, 2022 conference, the Termination Date provided in paragraph 2 of the Stipulation and Consent Order, has been extended until the earlier of (a) the Effective Date and (b) January 31, 2023, and may be extended further by Order of the Court for cause shown if the Effective Date has not occurred.

3.     **Amended and Restated 2018 Agreement**.  Contemporaneously with the execution of this Settlement Agreement, the Parties shall execute the Fifth Amendment to the Development, License and Commercialization Agreement dated as of June 14, 2018, annexed hereto as Exhibit A ("**Fifth Amendment**," and the 2018 Agreement as amended by the Fifth Amendment, the "**Amended 2018 Agreement**"), the effectiveness of which shall be subject to the occurrence of the Effective Date.

- 2 -

**4.**    **Legal Fees**.  Each Party shall bear its own fees and costs, including attorney fees, incurred in connection with the Adversary Proceeding and in connection with the preparation, execution, and performance of the Settlement Documents.

**5.**    **Released Claims**.  Upon the terms and subject to the conditions of the Settlement Documents, in consideration of the mutual execution of the Settlement Documents, effective as of the Effective Date, each Party hereby releases, acquits, and forever discharges, and on behalf of its respective Affiliates, directors, officers, members, managers, partners, employees, agents, representatives, assigns, predecessors, successors, and other related persons or entities hereby release, acquit, and forever discharge, the other Parties and their Affiliates, directors, officers, members, managers, partners, employees, agents, representatives, assigns, predecessors, successors, or other related persons or entities from any and all pending and potential claims, demands, all manner of actions, causes of action, suits, debts, liabilities, losses, damages, attorneys' fees, costs, expenses, judgments, settlements, interest, punitive damages and other damages or costs of whatever nature, whether known or unknown, accrued or unaccrued, pending or future, certain or contingent, foreseeable or not foreseeable, arising out of, derived from, predicated upon or relating to the 2018 Agreement and/or the 2022 Agreement through the Effective Date as defined herein, including any of the claims or counterclaims that were brought or could have been brought in the Adversary Proceeding against another Party (collectively, the "**Released Claims**"); provided, however, that nothing in this Section 5 shall prevent or impair the right of any of the Parties to bring a proceeding in court for a breach of, or to enforce any requirement or provision of, this  Settlement Agreement or any representation, warranty, or covenant herein (but any Released Claim relating to the 2018 Agreement through the Effective Date shall be released notwithstanding the attachment of the Fifth Amendment hereto).  For purposes of this Settlement Agreement, the term "**Affiliate**" shall have the meaning with respect to any Person (as defined in Exhibit A) under section 101(2) of the Bankruptcy Code.

Each Party further acknowledges and agrees that:

**(a)**    It may have sustained harms on or prior to the Effective Date in any form that are presently unknown and unsuspected, and that such harms might give rise to additional harms in the future.  Nevertheless, each Party acknowledges and agrees that the Settlement Documents have been negotiated and agreed upon, notwithstanding the existence of such possible harms, and that such unknown harms are released upon the occurrence of the Effective Date under this Section 5 to the extent based upon actions through the Effective Date.

**(b)**    Upon the occurrence of the Effective Date, if any fact relating to the Settlement Documents or the Adversary Proceeding now believed to be true is found hereafter to be other than, or different from, that which is now believed, each Party expressly assumes the risk of such difference in fact and agrees that the Settlement Documents shall be, and will remain, effective notwithstanding any such difference in fact, subject to each Party's right to bring a proceeding for a breach of the Settlement Documents or any representation, warranty, or covenant contained in any of the Settlement Documents.

**(c)**    This Settlement Agreement may be pleaded as a full and complete defense to, and used as a basis for injunction against, any proceeding that may be instituted, prosecuted or attempted in breach hereof without requiring the posting of a security or bond.

OMM_US:80949944.10

**(d)**      Each Party, on behalf of itself and its respective Affiliates, directors, officers, members, managers, partners, employees, agents, representatives, assigns, predecessors, successors, and other related persons or entities, hereby covenants and agrees not to pursue or prosecute any suit, claim, action, or proceeding seeking recovery or injunctive relief against or from any one or more of the other Parties and their Affiliates, directors, officers, members, managers, partners, employees, agents, representatives, assigns, predecessors, successors, or other related persons or entities arising out of or relating to any one or more of the Released Claims.  If any Party or any of its respective Affiliates, directors, officers, members, managers, partners, employees, agents, representatives, assigns, predecessors, successors, and other related persons breach this Section 5(d), such Party shall promptly reimburse and hold harmless the other Party for any fees, costs and expenses incurred by the non-breaching Party or any of its respective Affiliates, directors, officers, members, managers, partners, employees, agents, representatives, assigns, predecessors, successors, and other related persons arising as a result of any breach of this Section 5(d) or the enforcement of any provision contained in Section 5.

6.      **Covenants**.

**(a)**      Until the Effective Date, the Parties agree to preserve and maintain all assets and contracts pertaining to the development, manufacture and commercialization of the Products (as defined in the 2018 Agreement) for the benefit of the Party to which control of such Products will belong following the Effective Date, provided, however, neither Party shall be required to make commercialization efforts or make efforts to seek regulatory approval in respect of any Products that are contemplated to be transferred to the other Party, unless such efforts will, after the Effective Date, benefit the other Party or advance the other Party's commercialization, or pursuit of regulatory approval, of any such Product.

**(b)**      Until the Effective Date, EVL agrees to pay any royalties owed to Nevakar under the 2018 Agreement.

**(c)**      Until the Effective Date, EVL agrees to pay any milestones owed to Nevakar under the 2018 Agreement, except as to amounts that pertain to the Nevakar Products (as defined in Exhibit A).

**(d)**      For the avoidance of doubt, the Parties acknowledge that neither intends to waive the other's performance of obligations arising under the 2018 Agreement or those that may arise between now and the Effective Date, except as specifically provided in the Stipulation and Consent Order or the Settlement Documents.  The Parties further agree that they will, in good faith, keep the other timely informed of any communications with, or obligation to, any third party or Regulatory Authority (as defined in the 2018 Agreement) that may mature or come due between the Execution Date and the Effective Date.

**(e)**      EVL further agrees that it will not take the position that discussions between Nevakar and third parties regarding the potential manufacture, licensing and/or commercialization of the Nevakar Products violate the Stipulation and Consent Order, provided that, absent EVL's written consent (not to be unreasonably withheld, delayed, or conditioned), Nevakar shall not enter into any binding contracts with such third parties conveying any of EVL's rights under the 2018 Agreement until after the Effective Date.

- 4 -

**(f)**    Nevakar further agrees that it will not take the position that discussions between EVL and third parties regarding the potential manufacture, licensing and/or commercialization of the Products (as defined in <u>Exhibit A</u>) violate the Stipulation and Consent Order, <u>provided</u> that, absent Nevakar's written consent (not to be unreasonably withheld, delayed, or conditioned), EVL shall not enter into any binding contracts with such third parties conveying any of Nevakar's rights under the 2018 Agreement until after the Effective Date.

**(g)**    The Parties, for themselves and their respective Affiliates, hereby covenant as of the Execution Date not to take any action between the Execution Date and the Effective Date that would be a breach of the Settlement Agreement and the Stipulation and Consent Order or that would otherwise impair the rights or benefits conveyed to either Party under the Settlement Agreement after the Effective Date.

**(h)**    Within five (5) Business Days after the Execution Date, Nevakar will transfer copies of the documents identified on <u>Exhibit 6(h)</u> to EVL.

**7.**    <u>**2022 Agreement**</u>.  Upon the occurrence of the Effective Date and subject to the terms and conditions of the Settlement Documents, any remaining obligations under the 2022 Agreement shall be discharged and released, and the August Termination shall be deemed withdrawn by Nevakar, which the Parties agree shall have no force or effect.

**8.**    <u>**Confidentiality**</u>.  The Parties shall publicly file the Settlement Documents, with any redacted portions to be agreed between the Parties as necessary to protect the Parties' respective interests.  Any non-public portions of the Settlement Documents and the information exchanged between the Parties pursuant or related to the Settlement Documents shall be maintained in confidence by the Parties and not disclosed to any Person other than a Party and its Affiliates, and its and their respective successors and assigns ("**Third Party**") without the prior written approval of the other Parties, except that **(a)** any Party may disclose the non-public Settlement Documents to its attorneys, advisors, auditors, and representatives who are subject to obligations of confidentiality consistent with this Settlement Agreement; **(b)** any Party may disclose the terms of the non-public Settlement Documents to any other Third Party in connection with actual or potential financing sources, equity investors—including, but not limited to NovaQuest, HIC, and Oxford, a potential or actual merger, reorganization, change of control or sale of all or substantially all of the applicable business or assets of such Party, in accordance with confidentiality terms at least as restrictive as the terms hereof; **(c)** with Nevakar's consent (which shall not be unreasonably withheld, delayed, or conditioned), EVL may disclose the non-public Settlement Documents to any party in interest in the Chapter 11 Cases, so long as such party in interest is not a competitor of Nevakar, in accordance with confidentiality terms at least as restrictive as the confidentiality terms of this Settlement Agreement; **(d)** any Party may disclose the terms of the non-public Settlement Documents as necessary for the exercise of the rights granted to the Parties under the Settlement Documents; and **(e)** any Party may disclose the terms of the non-public Settlement Documents and information exchanged between the Parties pursuant to the Settlement Documents as otherwise required by law (including the Bankruptcy Code, compulsory legal process, statute, ordinance, or regulation), or to the extent any Party believes in good faith it necessary to disclose such terms or information to comply with any SEC reporting requirements or by the rules or regulations of any stock exchange that the Party is subject to.  In the event of any disclosure pursuant to clauses **(d)**

- 5 -

or **(e)** of the immediately preceding sentence, the Party seeking to make such disclosure shall **(1)** provide the other Parties with as much advance notice as reasonably practicable of the required disclosure; **(2)** limit any disclosure to the specific purpose at issue, and limit the amount of disclosure by redacting or withholding all portions of the non-public Settlement Documents not related to the specific purpose at issue and by seeking confidential treatment for those portions that cannot be redacted or withheld; and **(3)** consult and cooperate in good faith with the other Party with respect to the foregoing limitations on disclosure.  If a Party is subpoenaed or otherwise required by law to give testimony or provide information which in any way relates to the non-public Settlement Documents, such Party shall give the other Parties prompt written notice of such requirement and, unless otherwise required by law, shall make no disclosure until the other Parties have had a reasonable opportunity to contest the right of the requesting person to such disclosure.  The Parties shall provide each other with reasonable cooperation and generally make their agents, employees, and contractors available to give testimony or to provide reasonable assistance, at the requesting Party's expense, in connection with any lawsuits, claims, proceedings, and investigations relating to the Settlement Documents.

   **9.**    <u>**Other Bankruptcy Matters**</u>.

   **(a)**    Except as provided in <u>Section 1(b)</u>, nothing in this Settlement Agreement shall be deemed an assumption or rejection of the 2018 Agreement or 2022 Agreement under section 365 of the Bankruptcy Code; <u>provided</u> that until the Effective Date, Nevakar's rights to object to assumption and assignment of the 2018 Agreement or the 2022 Agreement under section 365 of the Bankruptcy Code shall be reserved expressly.

   **(b)**    Upon the occurrence of the Effective Date, Nevakar covenants that it shall not file, and shall withdraw any prior filing of, a proof of claim in the Chapter 11 Cases asserting any Released Claim.

   **10.**    <u>**Term and Termination**</u>.  Upon the occurrence of the Effective Date, the Settlement Agreement shall remain in effect until termination or expiration of the Amended 2018 Agreement, except the releases and discharges set forth in <u>Section 5</u> of this Settlement Agreement shall survive the termination or expiration of this Settlement Agreement, and the confidentiality obligations set forth in <u>Section 8</u> of this Settlement Agreement shall survive for a period of twenty (20) years from the Effective Date.  If the Effective Date does not occur on or prior to the Termination Date (as may be further extended in accordance with Section 2 of this Settlement Agreement), unless extended by written agreement of the Parties, this Settlement Agreement shall automatically terminate immediately, provided that the confidentiality obligations set forth in Section 8 of this Settlement Agreement shall survive for a period of twenty (20) years from the Execution Date.

   **11.**    <u>**Assignment**</u>.  Neither this Settlement Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any Party (whether by operation of Law or otherwise), without the prior written consent of the other Party(ies); <u>provided</u>, <u>however</u>: (a) either Party, without the consent of the other Party, may transfer or assign this Settlement Agreement to any of a Party's Affiliates or to any successor by merger, or change of control or a purchaser of all or substantially all of the assets of a Party's business to which the Settlement Agreement relates (whether in a stock sale, asset sale, merger, reorganization, or otherwise);

- 6 -

(b) from and after the Effective Date, during the pendency of the Chapter 11 Cases, EVL may assign this Settlement Agreement or any of the Settlement Documents (including, for the avoidance of doubt, the Amended 2018 Agreement) to any person in connection with the Chapter 11 Cases without the consent of Nevakar; and (c) notwithstanding any such assignment of this Settlement Agreement, EVL and any successor or assignee of EVL shall be bound by, and have all obligations contained in, Sections 5 and 8.  Any attempted assignment of this Settlement Agreement not in accordance with the terms of this Section 11 shall be void and of no force or effect.  Within five (5) Business Days after any transfer or assignment by a Party pursuant to this Section 11, the transferring or assigning Party shall provide written notice to the other Party of such transfer or assignment.  For the avoidance of doubt, nothing herein is intended by implication or otherwise to limit the right of Nevakar to convey or assign any right, title or interest in the Nevakar Products.

12.    **Notice**.  Notices, requests, consents, claims, demands, waivers and other communications under this Settlement Agreement shall be in writing and shall be deemed to have been duly given when both emailed and either hand-delivered or sent by Federal Express or similar overnight courier and addressed as specified below.

If to EVL, to

> Endo Ventures Limited
> First Floor, Minerva House
> Simmonscourt Road
> Ballsbridge
> Dublin 4
> Attn: Legal
> E-mail: legalnotices@endo.com

with a copy to:

> Matthew J. Maletta
> Endo International plc
> 1400 Atwater Dr.
> Malvern, PA 19355-8701
> E-mail: Maletta.Matthew@endo.com

> Brett J. Williamson
> O'Melveny & Myers LLP
> Times Square Tower
> 7 Times Square
> New York, NY 10036
> E-mail: bwilliamson@omm.com

If to Nevakar Inc. or Nevakar
Injectables, Inc., to

- 7 -

OMM_US:80949944.10

Nevakar Injectables, Inc.
1019 US Highway 202-206, Building K
NJ Center of Excellence
Bridgewater, NJ 08807
Attn: CFO
E-mail: mwoodworth@nevakar.com

with a copy to

Andrew Berdon
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
E-mail: andrewberdon@quinnemanuel.com

Any Party may change its notice information above by giving the other Parties written notice, delivered in accordance with this <u>Section 12</u>.

13.    <u>**Entire Agreement**</u>.  This Settlement Agreement (together with the exhibits hereto) constitute the entire agreement among the Parties with respect to the subject matter of such documents and supersede all other prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter of such documents.  In the event of any inconsistency between the provisions of this Settlement Agreement and any of the other Settlement Documents, the provisions of this Settlement Agreement shall prevail.  There are no covenants, promises, agreements, warranties, representations, conditions, or understandings, either oral or written, between EVL, on the one hand, and Nevakar, on the other hand, other than as are set forth in the Settlement Documents.

14.    <u>**Amendment**</u>.  This Settlement Agreement may be amended, modified or supplemented only by a written agreement duly executed and delivered by the Parties, and any purported amendment by any Party or Parties effected in a manner which does not comply with this <u>Section 14</u> shall be void and of no force or effect.

15.    <u>**Construction and Interpretation**</u>.

**(a)**    The headings contained in this Settlement Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Settlement Agreement.

**(b)**    No Party, nor its respective counsel, shall be deemed the drafter of this Settlement Agreement for purposes of construing the provisions hereof, and all provisions of this this Settlement Agreement shall be construed according to their fair meaning and not strictly for or against any Party.

**(c)**    Unless otherwise indicated to the contrary herein by the context or use thereof, all references to periods of days for taking certain actions in the Settlement Documents shall be construed to refer to Business Days.

- 8 -

(d)    Unless otherwise indicated to the contrary herein by the context or use thereof (i) the words, "herein," "hereto," "hereof" and words of similar import refer to this Settlement Agreement as a whole and not to any particular section, subsection, paragraph, subparagraph or clause contained in this Settlement Agreement, (ii) masculine gender shall also include the feminine and neutral genders, and *vice versa*, (iii) words importing the singular shall also include the plural, and vice versa, (iv) the words "include," "includes" or "including" shall be deemed to be followed by the words "without limitation", (v) a capitalized term has the meaning assigned to it herein, (vi) "or" is not exclusive, (vii) all references in this Settlement Agreement to designated "Articles," "Sections," "paragraphs," "clauses" and other subdivisions are to the designated Articles, Sections, paragraphs, clauses and other subdivisions of this Settlement Agreement unless otherwise specified, and (viii) any definition of or reference to any agreement, instrument, document, statute or regulation herein shall be construed as referring to such agreement, instrument, document, statute or regulation in effect as of the date hereof.

16.    **Severability**.  If any term or other provision of this Settlement Agreement is determined by a court of competent jurisdiction to be invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not invalidate or render unenforceable such term or provision in any other jurisdiction, and all other provisions of this Settlement Agreement shall remain in full force and effect so long as the economic or legal substance of the benefits to be obtained by, or burdens imposed upon, such Party contemplated hereby is not affected in any manner materially adverse to any Party.  Upon such determination that any term or other provision is invalid, illegal or unenforceable, the Parties shall negotiate in good faith for a substitute provision to continue the intent and purpose of such invalid provisions, and the validity, legality, and enforceability of the remaining provisions shall not be in any way impaired thereby.

17.    **Governing Law**.

(a)    This Settlement Agreement and any disputes hereunder shall be governed by and construed in accordance with the substantive and procedural Laws of the State of New York, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the Law of any jurisdiction other than the State of New York.

(b)    The Parties irrevocably agree that the Court shall have exclusive jurisdiction to deal with any disputes arising out of or in connection with this Settlement Agreement and that, accordingly, any proceeding arising out of or in connection with this Settlement Agreement shall be brought in the Court and each Party consents to the entry of a final order pursuant to 28 U.S.C. § 157 and under Article III of the Constitution by the Court with respect to any such dispute.  Notwithstanding the foregoing, if there is any dispute arising out of or in connection with this Settlement Agreement for which the Court does not have subject matter jurisdiction, the Federal Courts of the United States of America or the courts of the State of New York in each case located in New York, New York shall have jurisdiction, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such Action.  Service of process, summons, notice or other document by mail to such Party's address set forth herein shall be effective service of process for any Action brought in any such court.  The Parties irrevocably and unconditionally waive any objection to the laying of venue of any Action in such

- 9 -

courts and irrevocably waive and agree not to plead or claim in any such court that any such Action brought in any such court has been brought in an inconvenient forum.

**18.** **No Admissions**.  All Parties acknowledge and agree that the matters set forth in this Settlement Agreement constitute the settlement and compromise of Released Claims and that this Settlement Agreement shall not constitute the admission of any fact, wrongdoing, or liability by any Party, including, but not limited to, in relation to the Released Claims, and neither the terms hereof, nor the fact of this Settlement Agreement itself, shall be evidence of any kind in any proceeding against any Party, except that this Settlement Agreement, any other Settlement Documents, or any instrument executed in connection herewith or therewith shall be admissible to enforce its terms.

**19.** **Waiver**.  Except as otherwise expressly provided herein, no waiver with respect to this Settlement Agreement shall be enforceable unless in writing and signed by the Party against whom enforcement is sought.  Except as otherwise expressly provided herein, no failure to exercise, delay in exercising, or single or partial exercise of any right, power or remedy by a Party, and no course of dealing between the Parties, shall constitute a waiver of, or shall preclude any other or further exercise of, any right, power or remedy.

**20.** **Counterparts**.  This Settlement Agreement may be executed in any number of counterparts (including facsimile or e-mail counterparts), each of which shall be an original as against a Party whose signature appears thereon, but all of which taken together shall constitute one and the same instrument.

**21.** **Representations and Warranties**.  Each Party hereby represents and warrants that, and in each case with respect to EVL subject to the 9019 Order becoming final and non-appealable (unless waived by the Parties), **(a)** it is entering into this Settlement Agreement and the Fifth Amendment on behalf of it and its Affiliates, has the authority to cause its Affiliates to comply with the terms and conditions of this Settlement Agreement and the Fifth Amendment; **(b)** it has approved the execution of this Settlement Agreement and the Fifth Amendment has authorized and directed the signatory officer below to execute and deliver this Settlement Agreement and the Fifth Amendment; **(c)** it has the full right and power to enter into this Settlement Agreement and the Fifth Amendment, and there are no other persons or entities whose consent or joinder in this Settlement Agreement and the Fifth Amendment is necessary to make fully effective those provisions of the Settlement Documents that obligate, burden, or bind it; **(d)** it has not transferred, assigned, or pledged to any Affiliate or any Third Party, the right to bring, pursue, or settle any of the claims, defenses, or counterclaims in the Adversary Proceeding; and **(e)** the execution and delivery of this Settlement Agreement and the Fifth Amendment and the performance by the Party of any of its obligations hereunder do not and will not conflict with or result in a breach of any other agreement to which it or any of its Affiliates is a party, any judgment of any court or governmental body applicable to the Party or its properties, or, to the Party's knowledge, any statute, decree, order, rule or regulation of any court or governmental authority applicable to the Party or its properties.  Each Party acknowledges and agrees that it is and shall remain fully responsible for the acts (and omissions) of such Party's Affiliates and successors as if they were a Party to this Settlement Agreement such that any act (or omission) by an Affiliate or successor of a Party, that, if committed (or not committed) would

- 10 -

be a breach of this Settlement Agreement by such Party, shall also be deemed a breach of this Settlement Agreement by such Party.

22.     Unless another form is required by Law or agreed by the Parties, execution of this Settlement Agreement and the Fifth Amendment shall be made either in writing (including the exchange of personally signed signature pages in PDF format) or via an e-signing effected through a reputable signing provider that offers an e-signing solution (such as DocuSign or Adobe Sign).

**[Signature page follows]**

- 11 -

**IN WITNESS WHEREOF**, and intending to be legally bound, this Settlement Agreement and Fifth Amendment is signed as indicated below by duly authorized representatives of EVL and Nevakar, respectively, effective as of the Execution Date.

**ENDO VENTURES LIMITED**

By: _____

Name: _____
      Marie-Therese Bolger

Title: _____
       Director

Date: _____
      20 December 2022

**NEVAKAR, INC.**

By: _____

Name: _____

Title: _____

Date: _____

**NEVAKAR INJECTABLES, INC.**

By: _____

Name: _____

Title: _____

Date: _____

**IN WITNESS WHEREOF**, and intending to be legally bound, this Settlement Agreement and Fifth Amendment is signed as indicated below by duly authorized representatives of EVL and Nevakar, respectively, effective as of the Execution Date.

**ENDO VENTURES LIMITED**

By: _____

Name: _____

Title: _____

Date: _____

**NEVAKAR, INC.**

By: _____
    *Navneet Puri*
    C6437AB491D04BA...

Name: Navneet Puri

Title: Chairman

Date: 12/21/2022 | 9:18:05 AM EST

**NEVAKAR INJECTABLES, INC.**

By: _____
    0967BBDC0080499

Name: Sriram Ramanathan

Title: CEO

Date: 12/20/2022 | 4:32:10 PM PST

**Exhibit 6(h)**



OMM_US:80949944.10

SEALED PURSUANT TO ECF NO. 55 FILED IN CASE NO. 22-07034

**EXHIBIT A**

MATERIAL IN THIS EXHIBIT WITHHELD PURSUANT TO
ECF NO. 55 FILED IN CASE NO. 22-07034