PROSKAUER ROSE LLP
Charles A. Dale
One International Place
Boston, MA 02110
Telephone: (617) 519-9600

and

Megan R. Volin
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000

*Counsel to NovaQuest Co-Investment Fund IX, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>ENDO INTERNATIONAL plc, et al.<br><br>                Debtors.[1] | Chapter 11<br><br>Case No. 22-22549 (JLG)<br><br>Jointly Administered |
| ENDO VENTURES LIMITED, an Irish Company,<br><br>                Plaintiff,<br><br>v.<br><br>NEVAKAR, INC., a Delaware corporation, and NEVAKAR INJECTABLES Inc., a Delaware corporation,<br><br>                Defendants. | Adv. Proc. No. 22-07034 (JLG) |

---

[1] The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these Chapter 11 Cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 1400 Atwater Drive, Malvern, PA 19355

**OBJECTION OF NOVAQUEST CO-INVESTMENT FUND IX, L.P.
TO DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY
CODE SECTIONS 105 AND 363(B) AND BANKRUPTCY RULES 6004
AND 9019 APPROVING ENTRY INTO A SETTLEMENT AGREEMENT
WITH NEVAKAR, INC. AND NEVAKAR INJECTABLES, INC.**

NovaQuest Co-Investment Fund IX, L.P. ("NovaQuest"), by and through undersigned counsel, hereby submits this objection (the "Objection") to the *Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105 and 363(b) and Bankruptcy Rules 6004 and 9019 Approving Entry into a Settlement Agreement with Nevakar, Inc. and Nevakar Injectables, Inc.* [Docket No. 56] (the "Motion").[2] In support of the Objection, NovaQuest relies on the *Declaration of Michael Bologna in Support of Objection of NovaQuest Co-Investment Fund IX, L.P. to Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105 and 363(b) and Bankruptcy Rules 6004 and 9019 Approving Entry into a Settlement Agreement with Nevakar, Inc. and Nevakar Injectables, Inc.* filed contemporaneously herewith (the "Bologna Declaration") respectfully states as follows:

**Background**

1.   NovaQuest is the single largest investor in Nevakar, Inc. and Nevakar Injectables, Inc. (collectively, "Nevakar"). More specifically, pursuant to a Funding Agreement dated as of May 30, 2019 (as amended, supplemented, or otherwise modified from time to time, the "Funding Agreement"), a redacted copy of which is attached to the Bologna Declaration as **Exhibit A**, NovaQuest made a substantial monetary investment in Nevakar for the express purpose of

---

[2]  NovaQuest did not receive service of the Motion, or the Notice of Hearing [Docket No. 59] which set forth the hearing date and objection deadline with respect to the Motion. *See Affidavit of Service* [Docket No. 60] and *Affidavit of Service* [Docket No. 63]. Upon learning of the upcoming hearing on January 6, 2023, counsel to NovaQuest promptly contacted counsel to the Debtors to request a short adjournment, which request was denied. Although NovaQuest acknowledges the deadline to respond to the Motion was January 4, 2023, NovaQuest respectfully requests that the Court consider the Objection due to these circumstances.

2

facilitating the development of pharmaceutical products that were the subject of the so-called "2018 Agreement"[3] between Endo Ventures Limited ("EVL") on the one hand and Nevakar on the other.

2. Pursuant to Section 8.5(a) of the Funding Agreement, "[Nevakar] may not materially amend, waive any material term of, or terminate [the 2018 Agreement] without NovaQuest's prior written consent . . ." Despite this clear contractual prohibition, without seeking NovaQuest's prior written consent, on August 11, 2022, Nevakar sent a letter to EVL purporting to terminate the 2018 Agreement.

3. The Debtors commenced these chapter 11 cases on August 16, 2022. On August 22, 2022, EVL filed a complaint commencing this adversary proceeding (the "Complaint"), in which it seeks, among other things, a declaratory judgment that Nevakar's purported termination of the 2018 Agreement was invalid.

4. On November 22, 2022, Nevakar advised NovaQuest that it had reached an agreement, in principle, to resolve its disputes with EVL and requested that NovaQuest provide its written consent to the settlement. In a draft form of written consent, a copy of which is attached to the Bologna Declaration as **Exhibit B**, Nevakar acknowledged that "[p]ursuant to Section 8.5(a) of the Funding Agreement, NovaQuest's prior written consent is required in order to terminate the [2018] Agreement." NovaQuest refused to sign the letter and did not otherwise consent to the settlement. On November 28, 2022, in its response to the November 2022 request, a copy of which is attached to the Bologna Declaration as **Exhibit C**, NovaQuest reminded Nevakar that it "did not supply its prior written consent to Nevakar's termination of the [2018] Agreement," and that it

---

[3] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

3

"does not consent to either (i) the principal settlement terms delivered within the Consent Letter or (ii) the termination of the [2018] Agreement." Inexplicably, Nevakar pressed ahead.

5.  EVL and Nevakar thereafter entered into the Settlement Agreement on December 21, 2022. The Settlement Agreement contemplates material amendments to the 2018 Agreement that Nevakar has no authority to make absent NovaQuest's prior written consent. Shockingly, at Paragraph 21 of the Settlement Agreement, Nevakar makes the following patently false representations:

> **(a)** it is entering into this Settlement Agreement and the Fifth Amendment on behalf of it and its Affiliates, *has the authority to cause its Affiliates to comply with the terms and conditions of this Settlement Agreement and the Fifth Amendment*; **(b)** it has approved the execution of this Settlement Agreement and the Fifth Amendment has authorized and directed the signatory officer below to execute and deliver this Settlement Agreement and the Fifth Amendment; **(c)** *it has the full right and power to enter into this Settlement Agreement and the Fifth Amendment, and there are no other persons or entities whose consent or joinder in this Settlement Agreement and the Fifth Amendment is necessary* to make fully effective those provisions of the Settlement Documents that obligate, burden, or bind it; **(d)** it has not transferred, assigned, or pledged to any Affiliate or any Third Party, the right to bring, pursue, or settle any of the claims, defenses, or counterclaims in the Adversary Proceeding; and **(e)** *the execution and delivery of this Settlement Agreement and the Fifth Amendment and the performance by the Party of any of its obligations hereunder do not and will not conflict with or result in a breach of any other agreement to which it or any of its Affiliates is a party*, any judgment of any court or governmental body applicable to the Party or its properties, or, to the Party's knowledge, any statute, decree, order, rule or regulation of any court or governmental authority applicable to the Party or its properties.

Settlement Agreement ¶ 21 (emphasis added).

6.  On December 23, 2022, Nevakar informed NovaQuest of the Settlement Agreement by email, and again requested NovaQuest's written consent. In response, NovaQuest repeated that "we never agreed to this and explicitly told you not to do this," and reiterated that it "ha[d] not consented and made it clear [it] wouldn't consent" to the Settlement Agreement. These email exchanges are attached to the Bologna Declaration as **Exhibits D** and **E**.

4

7.  On Friday January 6, NovaQuest retained the undersigned bankruptcy counsel, who immediately made Debtors' counsel aware of these facts. Despite the fact that its counterparty (Nevakar) has no authority to enter into or effectuate the proposed settlement, counsel has advised the undersigned that the Debtors intend to proceed with the instant Motion for approval of the Settlement.[4]

**Argument**

8.  A contract entered into without the requisite authority is null and void under New York law. *See 1230 Park Assoc., LLC v. Northern Source, LLC*, 852 N.Y.S.2d 92 (App. Div. 2008) (holding loan agreement null and void where plaintiffs' owner had no authority to enter into loan transactions with defendant, because plaintiffs' operating agreements required a majority vote of their operating managers and no vote was taken); *56 E. 87th Units Corp. v. Kingsland Group, Inc.*, 815 N.Y.S.2d 575 (1st Dept. 2006) (holding loan agreement void because president of corporation did not have authority to enter into such transactions without board authorization, and there was no such authorization).

9.  The proposed Settlement Agreement, which contemplates material amendments to the 2018 Agreement, is unauthorized and cannot be approved by this Court. As explained above, NovaQuest did not consent to the purported termination of the 2018 Agreement, and it has not consented to the Settlement Agreement or the amendments it contemplates.

---

[4] The Debtors are now fully aware that they are dealing with a party that lacks the authority to enter into the Settlement Agreement, or to make material changes to the 2018 Agreement. The Debtors are further aware that their efforts to modify the 2018 Agreement will both violate the Funding Agreement between Nevakar and NovaQuest and cause substantial financial harm to NovaQuest. For these reasons, NovaQuest is undeniably a creditor of these estates holding a substantial post-petition administrative claim for tortious interference. "Under New York law, tortious interference with contract 'requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom.'" *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F.Supp.3d 16, 29 (S.D.N.Y. 2017) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 646 (1996)).

5

10. Section 8.5(a) of the Funding Agreement provides, in relevant part, that Nevakar cannot "materially amend, waive any material term of, or terminate the [2018] Agreement without NovaQuest's prior written consent (such consent not to be unreasonably withheld, conditioned or delayed), except where such amendment or waiver could not be reasonably expected to result in a Material Adverse Effect."[5]  Absent NovaQuest's written consent, which it has not and will not provide, Nevakar lacks any authority to enter into the Settlement Agreement.  The Court should, therefore, deny the Motion and reject the Settlement Agreement because Nevakar, the Debtors' purported counterparty to the Settlement Agreement, does not have authority to enter into the Settlement Agreement or take the actions contemplated by it.

---

[5] There can be no good faith argument that the Settlement Agreement falls into the sole exception to the consent requirement of Section 8.5(a). A "Material Adverse Effect" under the Funding Agreement includes, among other things, (i) a material adverse effect on the ability of Nevakar to perform its material obligations under the Funding Agreement (Section 8.5 of which requires compliance with the terms of the 2018 Agreement), or (ii) "a material adverse effect on Development or Commercialization of the Products, taken as a whole."  Among other things, the Settlement Agreement explicitly provides that commercialization rights for two of the five Products (as defined in the Funding Agreement) will be terminated, and the licensing arrangements for the remaining three Products will be materially changed.  The elimination of two out of five pharmaceutical products from a contract for the commercialization of such contracts will have a profound impact on Nevakar and the development and commercialization of those products.  For the same reasons, NovaQuest's refusal to consent to the Settlement Agreement is not unreasonable.  Accordingly, Nevakar's entry into the Settlement Agreement and the proposed amendments to the 2018 Agreement are plainly unauthorized absent NovaQuest's written consent.

6

**WHEREFORE**, for the reasons set forth herein, the Court should deny the Motion and grant such other relief as is appropriate.

Dated: January 8, 2023
     New York, New York

                        **PROSKAUER ROSE LLP**

                        */s/ Charles A. Dale*
                        Charles A. Dale
                        One International Place
                        Boston, MA 02110
                        Telephone: (617) 519-9600
                        Email: cdale@proskauer.com

                        and

                        Megan R. Volin
                        Eleven Times Square
                        New York, NY 10036
                        Telephone: (212) 969-3000
                        Email: mvolin@proskauer.com

                        *Counsel to NovaQuest Co-Investment Fund IX, L.P.*